IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | Case No. BK24-40202 |
| | ) | |
| COLTON AND STEPHANIE | ) | Chapter 12 |
| OSBORN, *et al.*, | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

## Opinion

This matter is before the court for hearing on June 25, 2025, on the debtors' motion to approve a settlement between the debtors and Stockmen's Bank (Doc #362), and the objection filed by Lime, LLC and Zachary Bosle (Doc. #364). Patrick R. Turner appeared for the jointly administered debtors, Colton and Stephanie Osborn, C&S Ag, LLC, and C&S Organics, LLC. John O'Brien appeared for Stockmen's Bank. Jordan W. Adam appeared for the objecting parties. Because the settlement is fair and equitable and in the best interest of the debtor's estate, it is approved.

## Findings of Fact

The debtors filed bankruptcy on March 8, 2024. Stockmen's Bank filed proof of claim #11 asserting an over-secured claim of $666,600.77.[1] The proof of claim includes applicable loan documents and security agreements. The loan documents contain an attorney's fee clause and provide a default interest rate of 45%. The loans were in default before the bankruptcy was filed.

The Bank asserts the debtors sold various items of personal property collateral at auction before the bankruptcy case was filed. But the Bank was not paid any sale proceeds. On October 28, 2024, the Bank was granted relief from the automatic stay of 11 U.S.C. § 362 to recover converted personal property collateral, or the value thereof, from third parties. The Bank filed conversion lawsuits against Double H Partnership, and against the objecting parties, Lime, LLC and Zachary Bosle.

---

[1] The proof of claim included two loans and one overdraft account. As of the date of the bankruptcy filing, the Bank claimed $109,786.58 on Note 75447, with per diem interest of $128.0989; and $556,579.31 on Note 75507, with per diem interest of $626.0058; and overdrafts totaling $234.88. The debt is secured by machinery, equipment, motor vehicles, and real estate. No objection has been filed regarding the Bank's claim.

Double H settled its litigation on May 5, 2025, paying the Bank $125,000. Litigation is still pending against the objecting parties.

The settlement between the debtors and the Bank resolves the Bank's objection to the debtors' Chapter 12 plan. It also settles the Bank's motion for relief from stay in which it seeks to recover and foreclose its liens against collateral still owned by the debtors. Under the settlement, the parties stipulate the total amount due the Bank as of May 5, 2025, is $555,597.42. The stipulated amount includes unpaid principal of $325,147.77 and accrued interest of $4,470.78. It also includes $255,978.87 in attorney's fees and costs, which the settlement refers to as "reimbursables."[2] The settlement requires the debtor execute a "modified" note. The modified note will add the accrued interest and the reimbursables to the principal balance of the note and reduce the interest rate from 45% to 9.5%. Of the total modified debt, only one-half, $277,798.71 is recourse against the debtors, the debtors' estates, and collateral still owned by the debtors. The other half is recourse only against collateral sold out of trust prepetition. The Bank also retains any claims it has against any parties who converted its collateral.

As parties against whom the Bank seeks to recover collateral to satisfy the other half, Lime, LLC and Zachary Bosle object to the settlement. They assert the settlement seeks approval of attorney's fees and costs without disclosure or a finding of reasonableness under 11 U.S.C. § 506(b), is usurious under Neb. Rev. Stat. § 45-109, is unfair and inequitable to the objectors, and allows postpetition attorney fees to be collected against the objectors.

### Conclusions of Law

"The standard for evaluation of a settlement 'is whether the settlement is fair and equitable and in the best interests of the estate.' A settlement is not required to constitute 'the best result obtainable.' Rather, the court need only ... determine that the settlement does not fall below the lowest point in the range of reasonableness." *Tri-State Fin., LLC v. Lovald*, 525 F.3d 649, 654 (8th Cir. 2008) (citations omitted). In evaluating the reasonableness of the settlement, the court must consider the following factors:

1. the probability of success in the litigation;
2. the difficulties, if any, to be encountered in the matter of collection;
3. the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

---

[2] The stated unpaid principal and interest numbers in the motion to approve differ from the court's calculations because the Bank, rightly or wrongly, partially credited "reimbursables" instead of applying the full $125,000 recovery from Double H to principal or interest.

4. the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*See id.* These factors, overall, weigh in favor of approving the settlement.

The settlement resolves significant and protracted litigation between the debtors and the Bank regarding the Bank's motion for relief, the Bank's proof of claim, and the debtors' Chapter 12 plan. The Bank raises issues regarding the feasibility of the plan, the debtor's good faith, and the lack of adequate protection. The Bank has a good chance of success considering it is entitled to its principal balance and interest at 45%. As an oversecured creditor, the Bank has a good chance to collect its claim, plus interest, plus attorney fees and costs.

As to the settlement, the Bank makes significant concessions. The settlement resolves the Bank's objections to confirmation. It resolves the motion for relief and allows the debtors to retain the equipment collateral they require to farm. The Bank will finance the debtor's operations through May 5, 2028. The Bank immediately reduces the interest rate on its debt from an unsustainable 45% to a manageable 9.5%. The Bank also reduces its total claim against the debtors and their estates to $277,798.71, an amount less than the Bank is owed under its existing proof of claim.

Without a settlement, putting aside attorney's fees and costs and looking at only the principal and interest amounts on the loans, the Bank is owed $292,134.27 as of April 24, 2025. When the bankruptcy case was filed, March 8, 2024, the Bank was owed $666,600.77, plus interest at 45%. The Bank recovered $125,000 from Double H on February 27, 2025. As of that date, the balance due on the two notes was $934,827.16.[3] Applying the $125,000 recovery reduces the balance due to $809,827.16.[4] Next, the Bank received sale proceeds of $559,922.76 on April 24, 2025. The sale proceeds paid $162,563.33 toward Note 75447, which paid that note in full.[5] The remaining $397,359.43 reduced the balance due on Note 75507 to $292,134.27.[6]

---

[3] Each note incurred 356 days of interest from the filing date through February 27, 2025, at the respective per diem rates stated in the Bank's proof of claim. Note 75447 had a beginning balance of $109,786.58, plus $45,603.21 of interest equals $155,389.79. Note 75507 had a beginning balance of $556,579.31, plus $222,858.06 of interest equals $779,437,37. The grand total as of April 24, 2025, equals $934,827.16.

[4] The Bank applied the Double H recovery to Note 75507.

[5] Each note incurred 56 days of interest from February 27, 2025, through April 24, 2025, at the same per diem rates, applying the Double H payment to interest only. Interest on Note 75447 totals $7,173.54. Applying the $125,000 to principal would reduce the total debt by approximately $8,630.

[6] Interest on Note 75507 over the 56 days totals $35,056.32.

The objectors assert the settlement seeks approval of attorney's fees and costs without disclosure or a finding of reasonableness under 11 U.S.C. § 506(b), is unenforceable as usurious under Neb. Rev. Stat. § 45-109, is unfair and inequitable to the objectors, is not in the best interest of the bankruptcy estate, and allows postpetition attorney fees to be collected against the objectors. The objections are not persuasive.

An oversecured creditor is entitled to interest on its bankruptcy claim and "any *reasonable* fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. § 506(b). There is no clear mechanism under statute or rule to determine the reasonable amount of fees, costs, or charges, but it is clear the court must make some determination.

> In determining the reasonableness of the fees, the court must consider whether the actions taken were reasonable and prudent in the circumstances in protecting the creditor's interest in the collateral and whether the amounts sought for the services performed are reasonable. To determine whether the actions of counsel were necessary to protect the creditor's interest, the court typically looks at: (1) whether, and to what extent, the creditor was oversecured; (2) whether the debtor provides for payment of the secured claim; and (3) whether the creditor faced a risk of nonpayment.

*Vantage Invs., Inc. v. Loc Nguyen Corp. (In re Vantage Invs., Inc.)*, 385 B.R. 670, 694 (Bankr. W.D. Mo. 2008) (citations omitted). The burden of proof as to reasonableness falls on the Bank. *See id*. The Bank has not made any showing as to the reasonableness of the fees and costs. Yet, under the settlement, fees and costs totaling $225,978.87 are added to the principal balance of the "modified" loan.[7]

The reasonableness of the fees need not be determined because, overall, the settlement reduces the Bank's secured proof of claim to an amount less than the Bank is entitled. Section 506(b) is implicated when a creditor wants to supplement and increase the secured portion of its proof of claim for payment through a bankruptcy plan. The section provides, "there shall be *allowed* to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges." *Id*. § 506(b) (emphasis added); *see also id*. § 502 (governing allowance of claims); *id*. § 1222 (stating a Chapter 12 plan must "provide for payment of allowed secured claims"). On whole, the Bank is not seeking to supplement its proof of claim for payment

---

[7] Arguably, fees and costs of $258,992.37 are being added to the principal balance as the Bank prematurely credited $33,013.50 to fees and costs from the $125,000 Double H payment. These fees and costs were not approved under § 506(b). *See Orix Credit All., Inc. v. Delta Res., Inc. (In re Delta Res., Inc.)*, 54 F.3d 722, 730 (11th Cir. 1995) (stating the payment of the interest and reasonable fees, costs, or charges must "await the completion of reorganization or confirmation of the bankruptcy case.").

through the bankruptcy plan. As to the bankruptcy estate, the Bank is voluntarily reducing its claim.

The objectors assert 45% postpetition, preconfirmation interest was not approved under § 506(b). This argument fails as a matter of law because the Bank established it is entitled to 45% interest under its loan documents. Postpetition, preconfirmation accrued interest requires a different analysis than attorney's fees and costs. Section 506(b) does not require interest be reasonable. It allows interest "provided for under the agreement or State statute under which such claim arose." *Id*. § 506(b). An oversecured creditor has

> an *unqualified right* to postpetition interest under § 506(b), and that interest should be computed at the rate – default as well as non-default – provided in the parties' agreement, as long as those rates are allowed under state law.

*Bank of Mo. v. Fam. Pharmacy, Inc. (In re Fam. Pharmacy, Inc.)*, 614 B.R. 58, 66 (B.A.P. 8th Cir. 2020) (emphasis added) (applying *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235 (1989)). The loan agreements provide for default interest at 45%.

To be polite, the 45% default rate of interest is *aggressive*, but it is not *usurious* under Nebraska law. Nebraska statutes contain a general prohibition against interest greater than sixteen percent per annum. *See* Neb. Rev. Stat. § 45-101.03. But the statute contains several exceptions. The exceptions, in large part, swallow the usury rule. In this case an exception includes, "Loans made primarily for business or agricultural purposes or secured by real property [made] by any financial institution insured by the Federal Deposit Insurance Corporation." *Id*. § 45-101.04(10).

For their usury argument, the objectors assert the settlement is unenforceable under Nebraska law because Neb. Rev. Stat. § 45-109 "forbids contracts for the payment of money to satisfy a debt where the debtor's payment does not actually discharge the debt." This is a parsing of the statute, which provides:

> Any contract for the payment of money in satisfaction of indebtedness which seeks, directly or indirectly, to prevent the debtor from discharging his obligation in full in any lawful money of the United States with the number of dollars he originally contracted to pay, plus interest not in excess of the maximum legal contract rate, is hereby declared to constitute usury, the same as if the contract sought to bind the debtor to pay more than the maximum legal rate of interest.

Neb. Rev. Stat. § 45-109. The settlement is for $555,597.42, plus 9.5% interest, with recourse against the debtor and the debtor's property for half of that amount. The objectors argue the agreement is usurious because if the debtors pay their half, the

indebtedness is not discharged. The argument is ill-conceived. The contracted amount of the debt is the full $555,597.42. The debt is discharged if the contracted amount is paid, plus interest, in an amount less than the usury rate. Making half non-recourse to the debtor simply does not constitute usury.

The objectors next contend the 45% default interest rate is an unenforceable penalty. They support their argument with Nebraska state law cases construing liquidated damages provisions. *See, e.g., Berens & Tate, P.C. v. Iron Mountain Info. Mgmt., Inc.*, 747 N.W.2d 383, 387 (Neb. 2008) ("Berens and Tate argues that the 'Permanent Withdrawal' fee is not a reasonable *liquidated damages* clause, but is rather an unenforceable penalty provision.") (emphasis added); *Kozlik v. Emelco, Inc.*, 483 N.W.2d 114, 121 (Neb. 1992) ("[T]he next question is whether the amount stipulated constitutes *liquidated damages* and is thus enforceable, or whether it imposes a penalty and is thus unenforceable.") (emphasis added).

A liquidated damages analysis is not proper in determining postpetition interest under § 502(b) and would be reversable error.

> [A]pplying the liquidated damages analysis to a contractual interest rate brings into play "reasonableness" factors that simply are not applicable to interest rates under 11 U.S.C. § 506(b). In *Ron Pair*, the Supreme Court was clear that the right to interest is "unqualified" by the reasonableness language that qualifies a creditor's right to fees, costs and charges. 489 U.S. at 241, 109 S.Ct. 1026. Therefore, the bankruptcy court erred in applying a liquidated damages analysis and ruling the default interest rate was an unenforceable penalty.

*Fam. Pharmacy, Inc.,* 614 B.R. at 65 (detailing the "readily discernable" differences between default interest and liquidated damages).

The objectors argue the settlement is unfair and inequitable because it "purports to place them on the hook for at least $277,798.71, plus 9.5% interest" when the debtors have assets available to pay the Bank. The argument is misplaced. The settlement does not place the objectors "on the hook". The objectors' liability, if any, already exists, and arises inside and outside of bankruptcy under Article 9 of the Uniform Commercial Code. The Code states the Bank's security interest "continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest". Neb. U.C.C. § 9-315. The objecting parties might prefer the secured party completely recover from the debtors and their bankruptcy estates. But any recovery from the objecting parties is authorized by state law and is not unfair or inequitable. The Bank has multiple avenues of recovery from which it can elect. It is free to avail itself against the objectors, with or without the settlement. The objectors are free to raise any defenses they have.

The addition of the $255,978.87 is not unfair or inequitable. The parties agreed, and the court in its order will specifically find the settlement between the debtor and the Bank is for bankruptcy purposes only.

Dated: June 27, 2025

BY THE COURT

/s/ Brian S. Kruse
Bankruptcy Judge